IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| HORIZON AIR CHARTER, LLC, | |
| Plaintiff, | CIVIL ACTION NO.: 4:21-cv-86 |
| v. | |
| ACM HAVAYOLLARI SANAYI TIC.LTD.STI, | |
| Defendant. | |

**O R D E R**

This matter comes before the Court on Plaintiff Horizon Air Charter, LLC's Motion for Default Judgment. (Doc. 18.) For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion **IN PART**. Plaintiff has demonstrated that its claims fall within this Court's subject matter jurisdiction. Moreover, Defendant ACM Havayollari Sanayi TIC.LTD.STI is subject to the Court's personal jurisdiction, and Defendant has been served with the Complaint and has failed to respond. Additionally, the Complaint sufficiently establishes Defendant's liability on Plaintiff's claims for breach of contract and conversion as well as its request for attorney's fees and expenses. However, the Court cannot assess the appropriate measure of damages on the current record. Thus, the Court will hold a hearing in this matter on December 6, 2022, at 2:00 p.m., in Courtroom One, 8 Southern Oaks Court, Savannah, Georgia.

**BACKGROUND**

Plaintiff is a business aircraft charter services company based in Dallas, Texas. (Doc. 1, p. 3.) On February 19, 2021, it entered into a charter aircraft agreement with Defendant, a Turkish

company. (Id.) Defendant markets its Gulfstream G-IV aircraft r/n TC-GVB (the "Aircraft") for third-party charters throughout the world including in the United States. (Id.) Plaintiff chartered the Aircraft for Defendant to fly one of Plaintiff's clients from Cartagena, Colombia, to Cairo, Egypt. (Id.) At the time of the contract, the aircraft was undergoing routine maintenance in Savannah, Georgia. (Id.) Per the parties' agreement, Plaintiff wired Defendant the full cost of the charter contract, $97,500, as an advance deposit. (Id.) On February 22, 2021, Defendant dispatched the aircraft from Savannah to Colombia to fulfill the contract with Plaintiff. (Id. at p. 4.) However, Defendant's flight crew detected a crack in the windshield of the aircraft. (Id.) Thus, the crew returned the aircraft to Savannah, and Defendant notified Plaintiff that it would not be able to fulfill the contract. (Id.) Plaintiff then secured an alternative aircraft from a different operator at a cost of $139,000. (Id.) Plaintiff demanded that Defendant return the $97,500 deposit, and Defendant refused. (Id.)

Plaintiff filed this action on March 31, 2021. (See generally id.) The progress of the case was delayed by Plaintiff's efforts to serve Defendant outside of the United States. (See doc. 11.) However, Plaintiff eventually served Defendant and obtained a Clerk's Entry of Default on April 1, 2022. (Doc. 16.) Plaintiff then filed the instant Motion for Default Judgment on July 5, 2022. (Doc. 18.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 establishes a two-step procedure for a party to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after receiving the clerk's

default, the Court can enter a default judgment provided the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2). However, the clerk's entry of default does not automatically warrant entry of default judgment. "[T]hree distinct matters emerge as essential in considering any default judgment: (1) jurisdiction; (2) liability; and (3) damages. Before the Court can grant plaintiff's motion for default judgment, all three must be established." Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). Thus, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007); see also Eagle Hosp. Physicians v. SRG Consulting, 561 F.3d 1298, 1307 (11th Cir. 2009). In assessing liability, the Court must employ the same standard as when addressing a Rule 12(b)(6) motion to dismiss for failure to state a claim. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) ("Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim.").

## DISCUSSION

### I. JURISDICTION

The Court must "satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." Odyssey Marine Exploration, Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel, 727 F. Supp. 2d 1341, 1345 (M.D. Fla. 2010); see also Geodetic Servs., Inc. v. Zhenghzou Sunward Tech. Co. Ltd., No. 8:13-CV-1595-T-35TBM, 2014 WL 12620804, at *2 (M.D. Fla. Apr. 4, 2014) ("A default judgment is void in the absence of the Court's personal jurisdiction over the defendant . . . ."). Plaintiff alleges that the Court has subject matter

3

jurisdiction over this case pursuant to 28 U.S.C. § 1332(a). (Doc. 1, p. 1; doc. 18, p. 4.) The Court agrees.

Section 1332(a)(2) vests this Court with jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the action is between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). The well-pleaded allegations of Plaintiff's Complaint establish that Plaintiff is a citizen of Texas and Defendant is a citizen of Istanbul, Turkey. (Doc. 1, p. 1; see also docs. 12-1, 12-3, 13); see 28 U.S.C. 1332(a)(c)(1) ("corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business"). Moreover, Plaintiff's claim to the $97,500 deposit alone, not to mention its claim for additional damages, exceeds $75,000.

While a closer issue, the Court also finds that Plaintiff has sufficiently pleaded that Defendant is subject to this Court's personal jurisdiction. On this front, Plaintiff alleges,

> [Defendant] continually and systematically solicits and does business within the United States, including the State of Georgia. [Defendant] also regularly takes the Aircraft at issue to Savanah, Georgia for maintenance and inspections to maintain airworthy status. Additionally, . . . this matter arises from and is related to [Defendant's] contacts with the forum state. Namely, [Defendant's] Aircraft was positioned in Savanah, Georgia at the time the contract with [Plaintiff] was entered, the Aircraft was flown back to Savanah, Georgia due to a cracked windshield, and the basis for [Defendant's] refusal to return the Deposit is predicated on the Aircraft having to be repaired in Savanah, Georgia.

(Doc. 1, pp. 1–2.) The Court must accept these facts regarding jurisdiction as true as they are uncontroverted by Defendant through affidavit or otherwise. See Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

For a defendant to be subject to a federal court's personal jurisdiction in a diversity action, "the exercise of jurisdiction must (1) be appropriate under the [forum state's] long-arm statute and

4

(2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257–58 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)). The Georgia long-arm statute, O.C.G.A. § 9-10-91, does not grant jurisdiction that is "coextensive with procedural due process," and "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." Id. at 1259 (citing Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa, 620 S.E.2d 352 (Ga. 2005)). As such, the Court must apply the "specific limitations and requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied." Id. at 1263. If the long-arm statute's requirements are satisfied, the Court then determines whether the exercise of jurisdiction comports with federal due process.

Among other things, the Georgia long-arm statute permits the exercise of jurisdiction over a nonresident who, personally or through an agent, transacts business within Georgia. O.C.G.A. § 9-10-91(1).[1] In determining whether jurisdiction can be exercised over a nonresident defendant under subsection (1) of the Georgia long-arm statute, the Supreme Court of Georgia has stated:

> 'jurisdiction exists on the basis of transacting business in this state if (1) the nonresident has purposefully done some act or consummated some transaction in this state, (2) [] the cause of action arises from or is connected with such act or transaction, and (3) [] the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.'

---

[1] Plaintiff failed to cite Subsection 9-10-91(1), or any provision of Georgia's Long Arm Statute, in its Complaint and Motion for Default Judgment. Plaintiff also failed to even address whether the exercise of jurisdiction over Defendant complies with federal due process. While the Court has satisfied itself that it has personal jurisdiction over Defendant based on the facts alleged in Plaintiff's Complaint, in the future, Plaintiff's counsel should more specifically address such critical matters.

Amerireach.com, LLC v. Walker, 719 S.E.2d 489, 496 (Ga. 2011) (quoting Aero Toy Store v. Grieves, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006)).  The first two factors determine whether "a defendant has established the minimum contacts with the forum state necessary for the exercise of jurisdiction," and, if such minimum contacts exist, the third element determines whether the exercise of jurisdiction "does not result solely from random, fortuitous or attenuated contacts." Paxton v. Citizens Bank & Trust of W. Ga., 704 S.E.2d 215, 219 (Ga. Ct. App. 2010).  Physical presence in the state is not a requisite for jurisdiction under this subsection, and "Georgia allows the assertion of long-arm jurisdiction over nonresidents based on business conducted through . . . Internet contacts."  Id. (quoting ATCO Sign & Lighting Co. v. Stamm Mfg., 680 S.E.2d 571, 576 (Ga. Ct. App. 2009)).  The ultimate question is whether the defendant engaged in conduct directed at Georgia and could "fairly be said" to have literally "transacted" business in the state of Georgia. Diamond Crystal Brands, Inc., 593 F.3d at 1264; see also id. at 1264 n.18 ("'Transact' means 'to prosecute negotiations,' to 'carry on business,' 'to carry out,' or 'to carry on.'") (quoting Webster's Third New Int'l Dictionary 2425 (1993)).

Here, Defendant "continually and systematically solicits and does business within the United States, including in the State of Georgia." (Doc. 1, pp. 1–2.) It "regularly" flew the Aircraft to Savannah, Georgia, to be repaired, inspected, and maintained.  (Id. at p. 2.)  Defendant had stationed the Aircraft in Savannah when Defendant contracted with Plaintiff to charter the Aircraft. (Id. at pp. 2–3.)  Defendant was to fly the Aircraft directly from Savannah to Plaintiff's customer to complete the contract.  (Id. at pp. 3–4.)  Further, Defendant flew the Aircraft back to Savannah when the crew determined that the windshield was cracked.   (Id.)   Thus, Defendant purposefully acted within Georgia and consummated transactions in this state.  Moreover, Plaintiff's Complaint

6

arises from or is connected with those acts and transactions.[2] As such, exercising jurisdiction over Defendant is appropriate under Georgia's long arm statute. See Diamond Crystal Brands, Inc., 593 F.3d at 1265 (finding defendant transacted business in Georgia pursuant to O.C.G.A. § 9-10-91(1) where, among other things, goods purchased under contract were picked up by defendant's customers in Georgia); Thomas v. Strange Eng'g, Inc., No. CV 111-074, 2012 WL 993244, at *5 (S.D. Ga. Mar. 22, 2012) ("Defendant transacted business in Georgia.  Defendant shipped a product to Georgia and derived revenue from the sale of that product.  Nothing in subsection (1) of the long-arm statute 'requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State.'") (quoting Innovative Clinical & Consulting Servs., 620 S.E.2d at 355).

Turning to step two of the personal jurisdiction analysis, the Due Process Clause of the Fourteenth Amendment allows for two types of personal jurisdiction, "general" and "specific" personal jurisdiction. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923–24 (2011).  General personal jurisdiction arises where "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against [the corporation] on causes of action arising from dealings entirely distinct from those activities." Id. (quoting Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement, 326 U.S. 310, 326 (1945) (first alteration in original)).  On the other hand, specific personal jurisdiction arises based on a party's contacts with the forum state that are related to the cause of action. Id.; see also Helicopteros Nacionales de Colombia, N.A. v. Hall, 466 U.S. 408, 414 nn. 8 & 9 (1984); Cable/Home Commc'n

---

[2] Plaintiff also alleges that Defendant markets the aircraft through a subscription-based marketplace. and frequently conducts international charter operations including in the United States. (Doc. 1, p. 3.) These allegations alone would likely be insufficient to establish personal jurisdiction in Georgia. See Gulfstream Aerospace Corp. v. Gulfstream Air Charter, Inc., No. 4:17-CV-26, 2018 WL 6069006, at *1 (S.D. Ga. Nov. 20, 2018).

Corp. v. Network Productions, Inc., 902 F.2d 829, 857 n. 41 (11th Cir. 1990). Because general jurisdiction is based upon activity unrelated to a particular cause of action, the "due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction." Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000). Under the more exacting general jurisdiction standard, due process requires that a defendant's "affiliations with the State [be] so 'continuous and systematic' as to render [it] essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 139 (2014) (quotation and citation omitted). For either general or specific jurisdiction to comport with due process, the defendant must have certain minimum contacts with the state, and "[t]he minimum contacts inquiry focuses on 'the relationship among the defendant, the forum, and the litigation.' This inquiry ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the 'random, fortuitous, or attenuated' contacts it makes by interacting with other persons affiliated with the state." Waite v. All Acquisition Corp., 901 F.3d 1307, 1312 (11th Cir. 2018) (quoting Walden v. Fiore, 571 U.S. 277, 284 (2014)) (internal citations omitted).

In the case at hand, Plaintiff offers no arguments as to the due process inquiry generally, much less an explanation of whether it relies on specific or general jurisdiction. Nonetheless, specific jurisdiction is the more appropriate basis for exercising jurisdiction over Defendant. Plaintiff does not allege facts that would support a finding that Defendant was "at home" in Georgia for purposes of general jurisdiction. However, Plaintiff does allege that its claims arose out of and were related to Defendant's contacts with Georgia. To assess specific jurisdiction, the Court must apply a "three-part test." Waite, 901 F.3d at 1313 (citing Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013)). The Court must weigh: (1) whether the plaintiff's claim arises out of or relates to the nonresident defendant's contacts with the forum

state; (2) whether the nonresident defendant purposely availed itself of the privilege of conducting activities in the forum state; and (3) whether exercising jurisdiction comports with traditional notions of fair play and substantial justice. Id.

Here, Plaintiff's claim arises out of and relates to Defendant's contacts with Georgia. Defendant stationed the Aircraft in Savannah, Georgia, and regularly had it repaired, maintained, and inspected there. Moreover, Defendant entered into the contract at the heart of this litigation while the Aircraft was in Savannah, and Defendant was to fly the Aircraft from Savannah to fulfill that contract. After discovering the cracked windshield, Defendant returned the Aircraft to Savannah. This establishes a "direct causal relationship between the defendant, the forum, and the litigation." Louis Vuitton Malletier, 736 F.3d at 1355–56. Further, Plaintiff has sufficiently alleged that Defendant has sufficient contacts with Georgia such that it has purposely availed itself of the privilege of conducting activities within the state. As discussed above, Plaintiff's claims relate to Defendant's contact with Georgia—its plane which was positioned in Georgia during the relevant period. Further, Defendant purposely availed itself of the privilege of doing business in Georgia by regularly stationing its aircraft in Savannah for maintenance, repairs, and inspections, by marketing the aircraft for charter services in Georgia, and by contracting with Plaintiff to charter the aircraft while it was in Georgia and during a timeframe that required Defendant to fly the aircraft from Georgia to Plaintiff's customer. Moreover, by failing to make good on its promise to have the plane flown from Georgia to Defendant's customer, Defendant should have reasonably anticipated that it would be sued in Georgia. Thus, Defendant had sufficient minimum contacts with Georgia, and those contacts were related to Plaintiff's claims.

Ordinarily, the burden would now shift to Defendant to present a "compelling case" that exercising jurisdiction over it would violate traditional notions of fair play and substantial justice.

Louis Vuitton Malletier, 736 F.3d at 1355.  However, because Defendant has defaulted, it has not made any such arguments. Nevertheless, the Court has considered the following:

> (a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (c) the shared interest of the several States in furthering fundamental substantive social policies.

Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1251 (11th Cir. 2000) (citing Burger King v. Rudzewicz, 471 U.S. 462, 466 (1985)).  Having weighed each of these factors, the Court finds that exercising jurisdiction over Defendant would not violate traditional notions of fair play and substantial justice.

For all these reasons, the Court finds that Plaintiff's Complaint sufficiently establishes the Court's subject matter jurisdiction over this action as well as its personal jurisdiction over Defendant.[3]

## II.   LIABILITY

### A.   Breach of Contract

Plaintiff first seeks judgment against Defendant on its breach of contract claim.  (Doc. 18, p. 5.)  The elements of a breach of contract claim in Georgia[4] are "(1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom."  Brooks v. Branch Banking & Tr. Co., 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015).  Plaintiff sufficiently alleges each of these elements. The Complaint plausibly alleges: (1) Plaintiff contracted with Defendant for Defendant to provide

---

[3] Plaintiff has also satisfied the requirement of proper service.  (See docs. 13, 14.)

[4] Because the parties have not offered the substantive law of any other state, the Court will apply Georgia law.  See Int'l Ins. Co. v. Johns, 874 F.2d 1447, 1458 n.19 (11th Cir. 1989) ("[B]ecause the parties failed to consider the choice of law in this diversity case, we must presume that the substantive law of the forum . . . controls.") (citation omitted).

Plaintiff's customer charter services in exchange for Plaintiff providing Defendant the deposit; (2) Plaintiff fulfilled its side of that agreement by paying the deposit; (3) Defendant failed to fulfill its obligations under the contract by not providing the charter services; and (4) Plaintiff suffered economic damage including the loss of the deposit. (Doc. 1, pp. 6–7.) Thus, Plaintiff has established each element of its breach of contract claim.

### B.     Conversion

Plaintiff also contends that Defendant is liable to it for conversion of the deposit. As explained by the Georgia Court of Appeals,

> "To make out a prima facie case, in an action for damages for conversion of personal property, the plaintiff must show title to the property, possession by the defendant, demand for possession, and refusal to surrender the property, or an actual conversion prior to the filing of the suit." Atlantic Coast Line R. Co. v. McRee, [] 76 S.E. 1057 ([Ga.] 1913). Any distinct act of dominion and control wrongfully asserted over another's personal property, in denial of his right or inconsistent with his right, is a conversion of such property. Lovinger v. Hix Green Buick Co., [] 140 S.E.2d 83 ([Ga. Ct. App.] 1964). However, when someone comes into lawful possession of personal property, in the absence of a demand for its return and a refusal to return the personal property, there is no conversion. McDaniel v. White, 230 S.E.2d 500 ([Ga. Ct. App.] 1976).

Taylor v. Powertel, Inc., 551 S.E.2d 765, 769 (Ga. Ct. App. 2001). Ordinarily, because money is fungible personal property that cannot be specifically identified, there is no cause of action for the conversion of money. Id. at 769–70. However, "[t]here exists an exception for the conversion of money; such money must comprise a specific, separate, identifiable fund to support an action for conversion." Id. at 769. Georgia courts have recognized that a cause of action for conversion can lie where a plaintiff makes a deposit for a specific purpose or issues an identifiable payment, even if those monies are later comingled with other funds. See Decatur Auto Ctr. v. Wachovia Bank, N.A., 583 S.E.2d 6, 9 (Ga. 2003) (plaintiff in conversion action need not identify specific dollars and coins represented by face value of checks and other negotiable instruments). In the case at

hand, Plaintiff has plausibly alleged that Defendant wrongfully retains possession of Plaintiff's $97,500 deposit and that Defendant has refused to surrender the deposit after Plaintiff has demanded its return. Consequently, Plaintiff has established that Defendant is liable for conversion.[5]

### C. Attorneys' Fees and Expenses

Plaintiff has also established that it is entitled to default judgment on its claim for attorneys' fees and expenses. The relevant statute provides:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

O.C.G.A. § 13-6-11. Under Georgia law, "if a plaintiff in its original complaint puts the defendant on notice that it is seeking attorney fees and expenses under O.C.G.A. § 13-6-11 as part of the relief prayed for in the case, and if a default judgment is subsequently entered against the defendant for failing to answer the complaint, then the plaintiff is entitled to an award of attorney fees and expenses as a matter of law." Water's Edge Plantation Homeowner's Ass'n, Inc. v. Reliford, 727 S.E.2d 234, 237 (Ga. Ct. App. 2012); see also Cotto L. Grp., LLC v. Benevidez, 870 S.E.2d 472, 480 (Ga. Ct. App. 2022) ("Thus, it is reversible error to decline to award attorney fees where a default judgment has been entered on a complaint that specifically seeks attorney fees under O.C.G.A. § 13-6-11."). Here, Plaintiff specifically sought attorneys' fees in its Complaint. (Doc. 1, p. 9.) Moreover, through its allegations that Defendant refused Plaintiff's request to return the deposit, the Complaint plausibly alleges that Defendant acted in bad faith, was stubbornly

---

[5] Plaintiff asserts that it is entitled to default judgment on its equitable claims of unjust enrichment and money had and received "in the event the Court does not award [Plaintiff] a default judgment as to its breach of contract claim . . . ." (Doc. 18, p. 6.) Because the Court has found default judgment warranted as to the breach of contract claim, the Court need not address Plaintiff's equitable claims.

litigious, and caused Plaintiff unnecessary trouble an expense. Accordingly, Defendant is liable for Plaintiff's expenses of litigation including reasonable attorneys' fees pursuant to O.C.G.A. § 13-6-11.

### III. DAMAGES

On a motion for default judgment, "[d]amages may only be awarded if the record adequately reflects the basis for the award through a hearing or detailed affidavits establishing the necessary facts." Carrier v. Jordaan, 746 F. Supp. 2d 1341, 1352 (S.D. Ga. 2010) (citing Bardfield v. Chisholm Prop. Circuit Events, LLC, No. 3:09cv232, 2010 WL 2278461, at *7 (N.D. Fla. May 4, 2010)). Awarding money damages is not appropriate "without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985). "While '[a]n evidentiary hearing is not a *per se* requirement,' the Eleventh Circuit [Court of Appeals] has made clear that 'such hearings are required in all but limited circumstances, as when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages.'" Jordaan, 746 F. Supp. 2d at 1352 (quoting SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (internal quotations omitted)).

"Even in the default judgment context, '[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters.'" Vision Bank v. Hill, No. 10-0333, 2011 WL 250430, at *2 (S.D. Ala. Jan. 25, 2011) (quoting Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003)). A court must ensure an award is not a "completely unreasonable or speculative amount [ ] with no factual basis." Anheuser Busch, 317 F.3d at 1266. "[I]t remains incumbent on plaintiff to prove the amount of damages to which it is entitled." Vision Bank, 2011

WL 250430, at *2.  "Rather than merely telling the Court in summary fashion what its damages are, a plaintiff seeking default judgment must show the Court what those damages are, how they are calculated, and where they come from." PNCEF, LLC v. Hendricks Bldg. Supply LLC, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010)).

As to Plaintiff's claim for breach of contract, the damages amount on such a claim is often described as "the amount which will compensate the injured [party] for a loss which a fulfillment of the contract would have prevented or the breach of it entailed.  That is, the injured [party] is, so far as it is possible to do so by a monetary award, to be placed in the position [it] would have been if the contract had been fully performed." Caldwell v. Church, 836 S.E.2d 594, 600 (Ga. Ct. App. 2019) (quoting Accent Walls v. Parker, 292 S.E.2d 509, 510 (Ga. Ct. App. 1982)).  Regarding Plaintiff's claim of conversion, damages are measured as "the highest value of the property existing between its conversion and the time of trial." O.C.G.A. § 44-12-152.

At first blush, Plaintiff's damages seem straightforward and capable of mathematical determination without the need for a hearing.  However, upon further inquiry, Plaintiff's damage request is puzzling and likely duplicative.  In its Motion for Default Judgment, Plaintiff requests the $97,500 deposit it paid Defendant *and* the $139,990 it paid a third-party provider for replacement charter services. (Doc. 18, pp. 7–8 ("Accordingly, the Court should award [Plaintiff] $237,490 in connection with its causes of action.").)  This would not place Plaintiff "in the position it would have been in had the contract been fully performed" as Plaintiff maintains.  (Id. at p. 7.)  Rather, such an award would be an unwarranted windfall to Plaintiff whereby it would recover from Defendant all the funds that it paid (to both Defendant and the third party) to secure the charter services while also retaining the funds Plaintiff's client paid for those services.  Thus, awarding the full measure of damages that Plaintiff requests would place it in a much better

position (seemingly $97,500 better) than it would have been in if Defendant had performed the contract.  Accordingly, the Court will hold a hearing on damages in this matter to enable Plaintiff to better state its position and offer evidence in support of its damages request.  At that time, the Court will also hear from Plaintiff regarding its claim for expenses including attorneys' fees and will inquire as to the reasonableness of those expenses.

## CONCLUSION

For the reasons and in the manner set forth above, the Court **GRANTS IN PART** Plaintiff's Motion for Default Judgment.  (Doc. 18.)  The Court will hold a hearing in this matter on Plaintiff's damages on December 6, 2022.  The Court **DIRECTS** Plaintiff's counsel to attempt to provide a copy of this Order to Defendant by mailing a copy of this Order to Defendant's last known address and by emailing a copy of this Order to any and all email addresses Plaintiff has for Defendant's counsel and representatives.

**SO ORDERED**, this 3rd day of November, 2022.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA